# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CIVIL ACTION NO. 1:18-CR-28 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **GREGORY A. JACKSON**, | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Gregory A. Jackson ("Jackson") moves the court to suppress evidence and statements resulting from his warrantless arrest on September 28, 2017. (Docs. 22-23). The court will deny Jackson's motion.

## I. **Findings of Fact**[1]

Detective Russell Schauer ("Detective Schauer") is employed by the Springettsbury Township Police Department and has served on the York County, Pennsylvania drug task force since 2008. (Tr. 2:9-3:3). In September 2017, a confidential informant[2] advised Detective Schauer that he knew an individual living

---

[1] The above factual narrative derives from testimonial evidence adduced during the suppression hearing in this matter, together with exhibits submitted by the parties. The court reporter has provided the court with a transcript of the June 21, 2018 suppression hearing. Citations thereto are abbreviated as "Tr." Citations to hearing exhibits are abbreviated as "Gov't Ex." and "Def. Ex."

[2] The confidential informant was previously arrested for delivery of a controlled substance, cocaine. (Id. at 5:17-20). He agreed to cooperate with investigators to avoid the filing of criminal charges. (Id. at 5:21-25, 6:15-19). Prior to the investigation and arrest of Jackson, the informant conducted a controlled drug buy which ultimately led to the arrest and conviction of three targets and seizure of cocaine, marijuana, a firearm, and cash. (Id. at 6:1-14, 26:9-11). Detective Schauer testified that the confidential informant never provided false information during the course of his cooperation. (Id. at 6:20-23).

in Philadelphia who used a phone assigned number 267-367-7957 (the "7957 phone") and from whom the informant could purchase methamphetamine and cocaine. (Id. at 4:4-19, 24:19-21; Def. Ex. 201 at 1). The confidential informant identified "Gregory Johnson" as the individual, explained that they met in prison, and acknowledged that he had traveled to Philadelphia in the past to meet with "Gregory Johnson." (Tr. 4:7-8, 25:1-19; Def. Ex. 201 at 1). Detective Schauer located a photograph of a "Gregory Johnson" living in the Philadelphia area on Facebook which the confidential informant identified as the subject individual. (Tr. 4:20-24; Def. Ex. 201 at 1). Detective Schauer found a "Gregory Jackson" in CPIN, a law enforcement database, and the informant again identified the man in the database photograph as "Gregory Johnson." (Tr. 4:24-5:10; Def. Ex. 201 at 1). Jackson's criminal history revealed that "Gregory Johnson" was an alias. (Tr. 5:12-16).

On September 26, 2017, at the direction of Detective Schauer, the confidential informant placed two calls to Jackson's 7957 phone.[3] (Id. at 7:6-15, 7:24-25, 8:1-5). During the second call at approximately 12:23 p.m., the informant told Jackson that he has a "chip in [his] windshield."[4] (Gov't Ex. 1 at 00:57-1:03; Tr. 9:9-11). The informant asked Jackson if he could provide "windshields" for a local garage and installation in his car. (Gov't Ex. 1 at 1:12-1:29). Jackson and the informant were unable to agree on a plan to exchange the "windshields," and

---

[3] The first phone call was short in duration because the informant's phone battery was low. (Id. at 7:19-23).

[4] The informant explained to Detective Schauer that "windshield" is street slang or code for methamphetamine because of the drug's broken glass appearance. (Id. at 9:12-10:3).

Jackson stated that he would "see what he could do" and get back to the informant about a course of action. (Id. at 2:01-4:20). On September 27, 2017, the informant placed a third call to Jackson's 7957 phone. (Tr. 10:11-23; see Gov't Ex. 2). During the call at approximately 3:07 p.m., the informant again told Jackson that his contact was "interested in putting four of them in his garage." (Gov't Ex. 2 at 00:27-29, 2:00-2:10). Jackson agreed. (Id. at 2:10-19). Detective Schauer explained that "four of them" referred to four "windshields," or four ounces of methamphetamine. (Tr. 11:2-7; see also Gov't Ex. 1 at 1:12-1:29).

On September 28, 2017, Jackson drove from Philadelphia to York County to deliver the methamphetamine. (Tr. 11:15-19). The confidential informant notified Detective Schauer of Jackson's presence in the area. (Id. at 11:15-19, 28:7-10). Detective Schauer assembled "an arrest surveillance team" and instructed the informant to meet him at the York City police station. (Id. at 11:20-22, 28:14-29:4). At the station, Detective Schauer searched the informant and his vehicle for contraband, drugs, and cash and found none. (Id. at 12:3-23, 29:8-23; Def. Ex. 201 at 1). The informant stated that Jackson was waiting for him at "East King Street and George [Street]." (Tr. 12:1-3; Def. Ex. 201 at 1). Detective Schauer explained that he would follow the informant in a separate vehicle, two officers would watch the deal location, and the other four officers would maintain a wide perimeter around the deal location. (Tr. 13:21-14:17). Detective Adam Bruckhart ("Detective

3

Bruckhart") was part of the surveillance team watching both the informant and Jackson.[5] (Id. at 39:18-40:4).

En route to the exchange location, Jackson called the confidential informant and provided a new location—a local fast food establishment. (Id. at 13:12-17; Def. Ex. 201 at 1). Detective Schauer directed the informant to pull over and wait as the surveillance team shifted to the new location. (Tr. 13:17-19). The informant and Detective Schauer then continued on to the fast food establishment. (Id. at 13:19-20). Upon arriving at the new location, Jackson called a second time to tell the informant he had returned to the intersection of East King Street and George Street. (Id. at 14:21-25; Def. Ex. 201 at 1). Again the surveillance team shifted to its original position, and then Detective Schauer permitted the informant to proceed. (Tr. 15:1-9). Detective Schauer testified that he was "behind the informant the entire time." (Id. at 15:20-24; Def. Ex. 201 at 1).

When the confidential informant arrived at the original exchange location, Jackson exited his green Toyota minivan and entered the informant's vehicle.[6] (Tr. 15:13-15). They drove several blocks to North Street where Jackson exited the vehicle and the informant departed for the police station. (Id. at 15:15-19). Detective Schauer followed the informant back to the station and retrieved from the vehicle's center console a white latex glove, within which was a purple latex glove

---

[5] Detective Bruckhart is employed by the West Manchester Township Police Department and has served on the York County, Pennsylvania drug task force for six years. (Id. at 39:2-11).

[6] A second individual remained in the minivan and was later arrested. (Def. Ex. 3 at 2).

4

containing "a glass like substance." (Id. at 16:5-22; Def. Ex. 201 at 1). The vehicle was otherwise free of drugs, cash, or other contraband. (Tr. 17:8-12; Def. Ex. 201 at 1). The confidential informant told Detective Schauer that Jackson had provided him the latex glove and was waiting for him to return with the money. (Tr. 16:13-17; Def. Ex. 201 at 1).

Detective Schauer performed a field test on the "glass like substance" which resulted in a "positive presumptive test for the presence of methamphetamine." (Tr. 17:3-7; Def. Ex. 201 at 1). He gave the radio command to arrest Jackson. (Tr. 17:20-18:1, 40:8-11, 40:17-19; Def. Ex. 201 at 2). A detective arrested Jackson as he was returning to the minivan from the North Street drop-off location, and Detective Bruckhart provided Jackson Miranda warnings. (Tr. 18:2-3, 18:8-10, 20:19-20, 22:6-7, 22:25, 38:3-6; 40:20-41:3, 41:7-15, 42:18-21; Def. Ex. 201 at 2). Jackson "verbally acknowledged" the Miranda warnings and that he understood them.[7] (Tr. 41:14-17, 44:16-22, 45:4-6). Jackson and the contents of his vehicle were brought to the police station, including a Samsung cell phone. (Id. at 18:15-17, 19:1-2, 41:3-6; Def. Ex. 201 at 2). Detective Schauer used his phone to call the 7957 phone and observed the Samsung phone ring and display his number. (Tr. 19:4-9; Def. Ex. 201 at 2).

Detective Schauer interviewed Jackson and took down bulleted notes of Jackson's statements, including his admission that he provided methamphetamine

---

[7] Jackson testified that he did not remember receiving Miranda warnings from any officer on September 28, 2017. (Tr. 46:7-23). He acknowledged receiving Miranda warnings for prior arrests, (id. at 46:24-47:10), but did not remember any of the officers speaking to him during his arrest and transportation to the police station September 28, 2017, (id. at 49:15-50:4).

5

to the confidential informant. (Tr. 19:10-11, 19:17-25, 20:6-8; see Gov't Ex. 3 at 1-2; Def. Ex. 201 at 2). Following the interview, Jackson initialed each bulleted note and signed the last page to authenticate the full statement, which included an acknowledgment that the statement was made "without threat or promise." (Tr. at 19:25-20:5; see Gov't Ex. 3 at 2).

## II. Procedural History

A federal grand jury returned a one-count indictment against Jackson charging him with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(a)(1)(A). Jackson pled not guilty. Jackson moved to suppress all evidence found and statements made after his warrantless arrest, and the court convened a suppression hearing on June 21, 2018. The motion is fully briefed and ripe for disposition.

## III. Discussion

Jackson argues that the police lacked probable cause to effectuate his warrantless arrest because there was no evidence of the confidential informant's reliability or credibility. He further avers that all evidence and statements obtained by law enforcement arising out of his warrantless arrest must be suppressed as fruit of the poisonous tree.

### A. Probable Cause to Arrest

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. amend. IV; Horton v. California, 496 U.S. 128, 133 (1990). The warrantless arrest of an individual in a public place, when supported by probable cause, does not violate the

Fourth Amendment. United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992) (citing United States v. Watson, 423 U.S. 411, 423-24 (1976)). Probable cause is an amorphous concept. Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." Id. (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981).

Probable cause exists when circumstances within a police officer's knowledge are sufficient for a prudent person to conclude that a person has been or is committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007) (citations omitted). Mere suspicion is insufficient, but evidence beyond a reasonable doubt is not required. Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). When information derived from an informant is used in the officer's assessment of probable cause, the court considers the informant's veracity, reliability, and basis of knowledge in its review of the totality of the circumstances. Gates, 462 U.S. at 233.

Jackson argues detectives arrested him without any "reasonably trustworthy information" that he had committed or was committing an offense. (Doc. 23 at 4). We disagree. As a threshold matter, Detective Schauer reasonably relied on his confidential informant. The informant had previously cooperated with Detective Schauer and never before provided false information to him. (Tr. 6:1-14, 6:20-23). In the instant matter, Detective Schauer independently verified all information he received from the informant regarding Jackson's identity, alias, and place of

7

residence. (Id. at 4:4-14, 4:20-5:16; Def. Ex. 201 at 1). The informant successfully reached Jackson on the 7957 phone number he previously provided to Detective Schauer and as promised, Jackson discussed providing methamphetamine to the informant on the recorded calls. (Tr. 4:4-6, 4:15-19, 24:19-21; Def. Ex. 201 at 1; see also Gov't Exs. 1-2). In addition to this corroborated information, Detective Schauer established the informant's basis of knowledge about Jackson, to wit: Jackson and the informant initially met in prison, maintained contact after their respective releases, and the informant visited Jackson in Philadelphia on more than one occasion. (Tr. 4:7-8, 25:1-19; Def. Ex. 201 at 1).

Detective Schauer possessed probable cause to arrest Jackson on September 28, 2018. In addition to the reliable intelligence the confidential informant provided on Jackson and his drug activities, Detective Schauer and fellow officers conducted a clean controlled drug buy from Jackson through the informant. Jackson was recorded agreeing to provide the informant with four "windshields," or four ounces of methamphetamine. (Gov't Ex. 1 at 1:12-1:29; Gov't Ex. 2 at 00:27-29, 2:00-2:19; see Tr. 11:2-7). Detective Schauer searched the informant and his vehicle before the drug exchange to ensure no pre-existing contraband would taint the controlled buy. (Tr. 12:3-23, 29:8-23; Def. Ex. 201 at 1). The informant was under police surveillance at all times during the exchange. (Tr. 13:17-20, 15:1-9, 15:20-24, 16:5-8; Def. Ex. 201 at 1). The detectives observed Jackson enter and exit the informant's car in a relatively brief period of time over a short distance of several blocks. (Tr. 15:13-19). Upon arrival at the police station, Detective Schauer discovered the latex glove, which Jackson gave to the informant, containing methamphetamine. (Id. at

8

16:5-22, 17:3-7; Def. Ex. 201 at 1). We find that Detective Schauer, based on the totality of the circumstances suggesting Jackson had committed a drug offense, possessed probable cause to initiate a warrantless arrest of Jackson.

### B.     Evidence and Statements Obtained

Jackson avers that all evidence and statements obtained by police after his arrest must be excluded. (Doc. 23 at 4-5). Evidence directly derived from an unlawful search or seizure is fruit of the illegality and warrants exclusion. Wong Sun v. United States, 371 U.S. 471, 484-86 (1963). In light of our conclusion that Detective Schauer effectuated a lawful warrantless arrest, Jackson cannot invoke the exclusionary rule appertaining evidence seized from his person and vehicle. To the extent Jackson contends he never received Miranda warnings, we credit the testimony of Detective Bruckhart. Jackson claims he does not remember receiving Miranda warnings, but he signed a statement indicating that he provided Detective Schauer the information "without threat or promise." (Tr. at 19:25-20:5, 46:7-23, 49:15-50:4; Gov't Ex. 3 at 2). Detective Bruckhart administered the Miranda warnings and waited for Jackson's verbal acknowledgment that he understood his rights. (Tr. 40:20-41:3, 41:7-17, 42:18-21, 44:16-45:6; Def. Ex. 201 at 2). Jackson's statement to Detective Schauer therefore was lawfully obtained.

**IV.** **<u>Conclusion</u>**

The court will deny Jackson's motion (Doc. 22) to suppress evidence and statements. An appropriate order shall issue.

<u>/S/ C<small>HRISTOPHER</small> C. C<small>ONNER</small></u><br>
Christopher C. Conner, Chief Judge<br>
United States District Court<br>
Middle District of Pennsylvania

Dated:   September 17, 2018