**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:18-CR-28** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **GREGORY A. JACKSON,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

This court sentenced defendant Gregory A. Jackson to 121 months'

imprisonment after a jury found him guilty of distributing methamphetamine.

Jackson now moves to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255,

alleging trial counsel was ineffective.  We will deny Jackson's motion.

### I.    Factual Background & Procedural History[1]

In January of 2018, a federal grand jury returned a one-count indictment

charging Jackson with distributing 50 grams or more of methamphetamine in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  The court appointed Attorney

Thomas A. Thornton to represent Jackson through the Federal Public Defender's

Office.  (See Doc. 11).  Jackson pled not guilty to the indictment and moved to

suppress all evidence and statements that he made to law enforcement after his

warrantless arrest.  (See Docs. 12, 22).  The court held a suppression hearing on

June 21, 2018, and later denied Jackson's motion, finding that police had probable

---

[1] The following factual narrative derives primarily from the presentence
investigation report (Doc. 105) prepared in this matter, along with the transcripts of
the jury trial (Doc. 119, 11/13/18 Trial Tr.; Doc. 120, 11/14/18 Trial Tr.) and
sentencing hearing (Doc. 121, 9/23/19 Sentencing Tr.).

cause to arrest Jackson and provided him with <u>Miranda</u> warnings before his admissions to police.  (<u>See</u> Doc. 41 at 9; <u>see also</u> Doc. 42).

A second federal grand jury returned a one-count superseding indictment against Jackson in September 2018 for the same offense and added Jackson's two aliases—"Gregory Johnson" and "Copeland Moore"— to the case caption.  (<u>See</u> Doc. 44; <u>see also</u> Doc. 46).  Jackson again pled not guilty.  (<u>See</u> Doc. 53).  Before trial, the government filed a motion *in limine* to preclude Jackson from presenting an entrapment defense.  (<u>See</u> Doc. 50).  The court denied the government's motion without prejudice, reserving its decision on the matter for trial, and noting that Jackson could not raise an entrapment defense unless and until he met the burden of production at trial entitling him to such a defense.  (<u>See</u> Doc. 71).

Jackson's trial occurred on November 13 and 14, 2018.  During trial, neither party called the government's confidential informant, Marty Fulton, as a witness; Jackson testified in his own defense, (<u>see</u> 11/13/18 Trial Tr. 150:19-180:15); and the court denied Jackson's midtrial request to present an entrapment defense because he failed to meet his burden of production, (<u>see</u> 11/14/18 Trial Tr. 8:8-9:6).  Jackson testified to participating in five drug transactions with the informant, including the deal involving over $4,500 worth of methamphetamine.  (<u>See</u> 11/13/18 Trial Tr. 156:8-171:7).  The jury found Jackson guilty of distributing 50 grams or more of methamphetamine.  (<u>See</u> Doc. 91).  The United States Probation Office subsequently prepared a presentence investigation report for Jackson.  (<u>See</u> Doc. 105).  The PSR noted Jackson's criminal history category as III and his adjusted total offense level as 30, resulting in a guidelines range of 121 to 151 months.  (<u>See</u>

id. ¶¶ 23, 31, 59).  Jackson's conviction also resulted in a statutory mandatory minimum of 10 years, or 120 months.  See 21 U.S.C. § 841(b)(1)(A)(viii).  On September 24, 2019, the court sentenced Jackson to 121 months' imprisonment.  (See Doc. 114).

Jackson appealed, arguing the court erred by: (1) denying his motion to suppress, (2) prohibiting him from presenting an entrapment defense at trial, and (3) denying his request for an offense-level reduction at sentencing based on his acceptance of responsibility.  See United States v. Jackson, 827 F. App'x 209, 210-13 (3d Cir. 2020) (nonprecedential).  Our court of appeals rejected Jackson's claims and affirmed the court's judgment.  See id.  Thereafter, Jackson timely filed the instant motion.  The motion is fully briefed and ripe for disposition.

## II.    Legal Standards

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence.  28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  See 28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is

required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See Strickland, 466 U.S. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687. To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. See id. at 689. There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." See Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

III.    **Discussion**

Jackson moves to vacate or set aside his sentence pursuant to Section 2255, alleging trial counsel, Attorney Thornton, was ineffective.  He claims Attorney Thornton's conduct was deficient in six areas: (1) presenting an entrapment defense; (2) engaging in plea negotiations; (3) challenging the racial composition of the jury pool; (4) raising suppression issues; (5) calling the government's informant as a witness; and (6) challenging the government's selective prosecution.[2]  As an initial matter, we note that many of the issues underlying Jackson's ineffective assistance claims were deemed meritless on direct appeal.  See Jackson, 827 F. App'x at 209-12.  Nonetheless, we consider all of Jackson's claims because "[a] § 2255 motion is a proper and preferred vehicle for a federal prisoner to allege ineffective assistance of counsel."  See United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (citations omitted).  We will address his claims *seriatim*.

A.      **The Entrapment Defense**

Jackson alleges Attorney Thornton made "constitutionally deficient" arguments in support of an entrapment defense during the pretrial and trial process.  (See Doc. 136 at 3-4; see also Doc. 138 at 1-9).  He also argues Attorney Thornton was ineffective for failing to subpoena the government's confidential informant as a witness at trial to elicit testimony critical to this defense.  (See Doc.

---

[2] We note that courts have a duty to "liberally construe *pro se* filings with an eye toward their substance rather than their form."  See United States v. Delgado, 363 F. App'x 853, 855 (3d Cir. 2010) (nonprecedential) (citing United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999)).

138 at 11; Doc. 140 at 4-5).  But Attorney Thornton's conduct was not deficient.  Nor was it prejudicial to Jackson because any additional attempts to raise an entrapment defense would have been meritless.  See Jackson, 827 F. App'x at 211-12; (see also 11/14/18 Trial Tr. 8:8-11).

An entrapment defense requires a defendant to produce evidence showing (1) the government induced the crime, and (2) the defendant lacked a predisposition to commit the crime.  See United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990).  To establish inducement, a defendant must demonstrate government action akin to "coercive tactics" or "harassment," see id. at 45 (quoting United States v. Fedroff, 874 F.2d 178, 184 (1989)), and beyond "mere solicitation," see id. (citing United States v. Marino, 868 F.2d 549, 552 n.6 (1989)).  Our court of appeals expressly held that Jackson failed to meet his burden of production regarding the first element.  See Jackson, 827 F. App'x at 212.  In denying Jackson's claim, the panel emphasized that "[e]ven Jackson's strongest example [of inducement] is unconvincing:  The informant asked Jackson to provide a quantity of meth, and Jackson did so with little objection or hesitation."  See id.  Jackson responds by claiming Attorney Thornton should have investigated the government's informant to "establish the long duration of the complex issues surrounding the entrapment defense."  (See Doc. 138 at 11).  He also asserts the informant's testimony at trial would have "introduced new and more detailed exculpatory evidence of the 'entrapment relationship' between Mr. Jackson and Mr. Fulton," (see Doc. 140 at 15), resulting in his acquittal, (see Doc. 138 at 8-9, 11).  But Jackson has not produced an affidavit from the informant or other evidence demonstrating the informant would have

waived his Fifth Amendment privilege or would have, in fact, provided exculpatory, rather than inculpatory, testimony.  See Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001).  Jackson's "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense" are insufficient to show that Attorney Thornton's conduct was objectively unreasonable.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991).

Assuming *arguendo* that the confidential informant's testimony could have provided some evidence that the government induced Jackson to commit the crime, his entrapment defense would still fail because he cannot overcome his predisposition to distribute methamphetamine.  As our court of appeals explained, Jackson was "predisposed to commit the crime[] for which he was convicted, as evidenced by the signed summary of his interview with police."  See Jackson, 827 F. App'x at 212 n.3.  The evidence against Jackson was overwhelming, including his own admissions, (see 11/13/18 Trial Tr. 156:8-171:7), and any additional attempts to present evidence supporting an entrapment defense would have been unsuccessful.  Attorney Thornton's failure to pursue a meritless claim does not constitute ineffective assistance of counsel.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (citations omitted).

**B.      Failure to Secure a Plea Agreement**

Jackson contends Attorney Thornton's failure to secure a plea agreement constitutes ineffective assistance.  (See Doc. 138 at 1).  The right to counsel guaranteed by the Sixth Amendment "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012).  Defense counsel has the duty to

communicate the government's formal offers "to accept a plea on terms and conditions that may be favorable to the accused."  See Missouri v. Frye, 566 U.S. 134, 145 (2012).  Counsel must also provide their client "enough information to make a reasonably informed decision whether to accept a plea offer" or go to trial.  See United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)) (cleaned up).

Here, the government offered Jackson a plea agreement "[a]pproximately one week before trial."  (See Doc. 139 at 13 n.4 (citing Doc. 139-1)).  Jackson's sentence under the plea agreement would have been at least 120 months because of the statutory mandatory minimum.  (See Doc. 139-1 at 3 ¶ 2); see also 21 U.S.C. § 841(b)(1)(A)(viii).  The government avers that Jackson rejected this offer after Attorney Thornton communicated it to him, and Jackson does not suggest otherwise.  (Compare Doc. 139 at 13 n.4, with Doc. 140 at 5-9; see also Doc. 139-1 at 25).  Jackson apparently rejected this offer because he believed his entrapment defense—"the principal defense option"—would be successful at trial.  (See Doc. 140 at 5-6).[3]  The court's pretrial order explained that Jackson "may not argue an entrapment defense to the jury unless and until the court determines he has met his burden of production entitling him to such a defense."  (See Doc. 71 at 2 ¶ 2).

---

[3] Jackson does not allege Attorney Thornton failed to "reasonably inform" him about his chances at trial, as evidenced by Jackson's continued and mistaken belief that his entrapment defense should have succeeded.  (See Doc. 138 at 1, 8; Doc. 140 at 1-5); see also supra at pp. 5-7.

Jackson was fully aware of this condition; he cannot now blame Attorney Thornton for his own decision to reject the plea agreement and pursue this strategy at trial.

Jackson also challenges Attorney Thornton's conduct during the trial. He claims that after the court prohibited him from raising an entrapment defense, "he questioned his attorney about taking the plea," and Attorney Thornton told him "it was not possible." (See Doc. 138 at 3). Jackson argues Attorney Thornton was ineffective because he "should have sought to have the plea agreement option [] signed." (See Doc. 140 at 6; see also Doc. 138 at 5). But Jackson incorrectly assumes "there was a plea and it could have been taken except for counsel's failure." (See Doc. 138 at 6). As the government notes, "there was no plea offer on the table" after Jackson exercised his right to go to trial. (See Doc. 139 at 12 ("Indeed, the Court's ruling [precluding Jackson's entrapment defense] came after the Government had rested.")). Attorney Thornton's failure to seek a plea agreement after the government invested all its resources into proving Jackson's guilt at trial (and was no longer willing to negotiate) does not constitute ineffective assistance. Jackson similarly cannot show how any effort to secure a plea at that late stage would have altered the outcome of the proceeding. See Strickland, 466 U.S. at 694. We will deny Jackson's motion as to this ground.

## C.    Fair Cross Section Claim

Jackson next alleges Attorney Thornton was ineffective for failing to object to the racial composition of the jury pool. Jackson is Jamaican, and his claim relates to the representation of African Americans on the jury. (See Doc. 140 at 10). To establish a fair cross section claim, Jackson must show that: "(1) [African

9

Americans] were a distinctive group in the community; (2) representation of [African Americans] in venires from which juries [were] selected [was] not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation [was] due to systematic exclusion of [African Americans] in the jury selection process."  See Howell v. Superintendent Rockview SCI, 939 F.3d 260, 265-66 (3d Cir. 2019) (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)) (internal quotation marks omitted).[4]  The second element "must be supported by statistical evidence."  See United States v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001) (citing Duren, 439 U.S. at 364).

Jackson cannot show Attorney Thornton's conduct was ineffective in this regard because he has failed to demonstrate how a fair-cross-section challenge would have had any merit.  Jackson contends "there was only one black jury member" at trial, even though "the county is more than 33% minority and others." (See Doc. 138 at 9).  But representation is not about who sits on the petit jury, it is about the jury venire.  See Howell, 939 F.3d at 265.  And Jackson's unsupported statistic does not account for the representation of African Americans on venires in relation to the population of the Middle District of Pennsylvania—i.e., the relevant community—which covers 33 counties.  See 28 U.S.C. § 118; see also Howell, 939 F.3d at 267-68 (denying claim where "statistical data fails to account for the entire jury venire using one of the statistical methodologies approved by this Court")

---

[4] Our court of appeals has held that African Americans are "unquestionably a constitutionally cognizable group."  See Howell, 939 F.3d at 266 (quoting Ramseur v. Beyer, 983 F.2d 1215, 1230 (3d Cir. 1992) (en banc)).

(citing Weaver, 267 F.3d at 244).  Jackson also has failed to argue—let alone

demonstrate—that African Americans are systematically excluded from venires

within the Middle District.  Jackson has not put forth evidence supporting the

second and third elements of this claim, and Attorney Thornton cannot be deemed

ineffective for failing to raise a meritless argument.  See Sanders, 165 F.3d at 253.

### D.      Probable Cause for the Arrest

Jackson next asserts Attorney Thornton's conduct was ineffective because he

failed to argue that police lacked probable cause for Jackson's initial arrest.  (See

Doc. 138 at 10).  However, Attorney Thornton made this precise argument on May

23, 2018, in Jackson's motion to suppress: "[T]here was no probable cause to arrest

Mr. Jackson, and, therefore, his arrest was unlawful and the fruits thereof,

including physical evidence and statements, should be excluded from trial."  (See

Doc. 22 ¶ 10 (citation omitted); see also Doc. 23).  The court rejected this argument,

(see Docs. 41, 42), and our court of appeals affirmed, finding "[t]here was ample

evidence to support probable cause here," see Jackson, 827 F. App'x at 211.

Jackson's allegation is "clearly frivolous based on the existing record."  See Booth,

432 F.3d at 545.  We will deny Jackson's motion as it applies to this ground.

### E.      Miranda Violation

Jackson also submits he was prejudiced by Attorney Thornton's failure to

argue that police did not provide Jackson with a Miranda warning at the time of his

arrest.  (See Doc. 138 at 10).  He is mistaken.  The court construed Attorney

Thornton's suppression motion as raising this very claim, and we rejected it on the

merits following a suppression hearing.  (See Doc. 41 at 9).  We credited the

11

testimony of Detective Bruckhart and found he "administered the <u>Miranda</u>

warnings and waited for Jackson's verbal acknowledgement that he understood his

rights." (<u>See</u> <u>id.</u> (citations omitted)).  Jackson's inability to show prejudice is fatal to

this claim, <u>see</u> <u>Strickland</u>, 466 U.S. at 687-88, and we will deny his motion as to this

ground.

### F.  Selective Prosecution Defense

Lastly, Jackson alleges Attorney Thornton was ineffective for failing to

pursue a defense of selective prosecution because he was targeted "due to the fact

that he had within his history the murder conviction and completed sentence."

(<u>See</u> Doc. 138 at 14).[5]  A defendant arguing selective prosecution must show (1)

"that persons similarly situated have not been prosecuted," and (2) "that the

decision to prosecute was made on the basis of an unjustifiable standard, such as

race, religion, or some other arbitrary factor, or . . . was intended to prevent [the]

exercise of a fundamental right."  <u>See</u> <u>United States v. Schoolcraft</u>, 879 F.2d 64, 68

(3d Cir. 1989) (*per curiam*).  A defendant bringing this claim "must establish each of

these elements with 'clear evidence' sufficient to overcome the presumption of

regularity that attaches to decisions to prosecute."  <u>See</u> <u>United States v. Taylor</u>, 686

F.3d 182, 197 (3d Cir. 2012) (quoting <u>United States v. Armstrong</u>, 517 U.S. 456, 464

(1996)).

---

[5] Jackson also seems to think the informant, rather than the government,
violated his rights by making "the decision to prosecute . . . to pay for his own debts
to society" and "pick[ing] [Jackson] for prosecution [even though] that job rests
with the Prosecutors and the Government[]."  (<u>See</u> Doc. 140 at 17-18).  This claim is
meritless.  The government prosecuted Jackson, not the informant.  (<u>See</u> Doc. 44).

Jackson has failed to establish either element.  His motion and supporting briefs are utterly devoid of any facts or data suggesting the government has failed to prosecute similarly situated individuals for selling methamphetamine to confidential informants.  (See Docs. 135, 136, 138, 140).  And the record demonstrates that the decision to prosecute Jackson was based on overwhelming evidence of his guilt—including recorded conversations where Jackson agreed to provide "windshields" or ounces of meth—rather than on the basis of an unjustifiable standard or to deter him from exercising his rights.  (See 11/13/18 Trial Tr. 81:21-82:10, 132:23-133:17 (Detective Russell Schauer's testimony)).  Again, Attorney Thornton's failure to raise a meritless argument did not violate Jackson's Sixth Amendment right to counsel.  See Sanders, 165 F.3d at 253.

## IV.    Conclusion

For the foregoing reasons, we will deny Jackson's motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated: February 5, 2024